### MENDELSON *v.* UNITED STATES (No. 34).[1]

1. "SILKS IN THE GUM" AND "SILKS BOILED OFF."

  The terms "silk in the gum" and "silk boiled off" as such are not terms of common, ordinary, or popular usage. They are terms coined and employed by English-speaking manufacturers, converters, dyers, and printers of silks to identify textiles of silk at particular stages of their manufacture. And while these terms may not be used generally by all importers and dealers in silks, their use is definite, uniform, and general with those whose business obliges them to distinguish between the crude fabric and the one which has been further advanced, and the general meaning given to them by that branch of the silk trade which invented and employs them should prevail.

2. SAME—QUESTION OF FACT.

  Whether the fabric actually falls within the meaning of "silks boiled off" or within that of "silks in the gum" is a question of fact and not of mere name independent of the processes to which the silk cloth has been subjected and the results thereby accomplished.

3. "SILKS BOILED OFF."

  If it be conceded, as contended by the importer, that a silk "boiled off" signifies a silk from which all the gum has been removed by boiling, or such a percentage of it as will make it fit for dyeing or printing, then the burden is on the importer to show by a preponderance of evidence that the gum had not been so removed.

4. SAME—PROOF.

  If "boiled off" be regarded as a mere process of manufacture, and if the question of whether the silks were or were not boiled off be considered as one purely of fact, then it would be incumbent on the importer to show by a preponderance of evidence that the silks had not been submitted to that process, and had not been, as a matter of fact, boiled off.

5. PROOF ON TEST OF SILKS IN THE GUM.

  If, on test, a loss of 5 per cent or more in the weight of the fabric is considered conclusive that the silks are still in the gum and not boiled off, then the importer must show the loss of this percentage in weight by a preponderance of evidence.

----

[1] Reported in T. D. 31451 (20 Treas. Dec., 577).

6. HABUTAI SILKS—HOW DUTIABLE.
Whether the decision here is made to depend on the meaning properly to be given to the terms "silk in the gum" and "silk boiled off," or on the loss of weight shown in the commodity by boiling-off tests, or on testimony as to whether the silks had been actually boiled off and were fit for dyeing and printing: *Held* that the Habutai silks in question are boiled-off silks and as such were dutiable as assessed under paragraph 387, tariff act of 1897.

United States Court of Customs Appeals, March 27, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, G. A. 6911 (T. D. 29789).

[Affirmed.]

*Walden & Webster* (*Howard T. Walden* of counsel) for appellants.
*D. Frank Lloyd,* Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, and BARBER, Judges.

SMITH, Judge, delivered the opinion of the court:
Certain woven fabrics in the piece, composed entirely of silk, were held by the collector of customs at the port of New York to be "boiled off," and he therefore assessed them for duty at $3 per pound under paragraph 387 of the tariff act of 1897, which paragraph reads in part as follows:

387. Woven fabrics in the piece, * * * if containing more than forty-five per centum in weight of silk, or if composed wholly of silk, * * * *if boiled off,* * * * three dollars per pound.

To this ruling the importers objected, and among other grounds of protest set up that the silk fabrics imported were still "in the gum" and not "boiled off" and that they should therefore be assessed for duty at $2.50 per pound under that part of paragraph 387 which reads as follows:

387. Woven fabrics in the piece, * * * if containing more than forty-five per centum in weight of silk, or if composed wholly of silk, * * * *if in the gum,* two dollars and fifty cents per pound.

The Board of General Appraisers sustained the collector and the importers appealed to the United States Circuit Court for the Southern District of New York, which appeal has been certified to this court for determination in accordance with the provisions of the tariff act of August 5, 1909.

The appeal raises but one real issue, and that is, Were the silks at the time of importation "boiled off" or were they still "in the gum"? It appears from the evidence in the case that the goods in question are known as Habutai silks, which are produced in Japan in the Provinces of Echezin, Fukui, Kaga, and Kawamata from the thread of the cultivated silkworm. This worm, it appears, spins into the form of a cocoon a fine silk thread composed of three or more finer threads bound together by a natural gum. From the cocoon this thread is wound

into a yarn which retains some, if not all, of the natural gum. The yarn which is to constitute the warp threads on the loom is treated before weaving with a gelatin or glue made of vegetable wax and sea-weed or some starchy substance, and this, together with the natural gum of both warp and weft threads, lends to the silk filaments the strength necessary to withstand the strain of weaving. Cloth woven from such yarn is stiff, hard, wiry, lusterless, brown or between buff and yellow in color, and so unsilky in appearance that it would not be identified as silk by those acquainted only with the finished article. The textile at this stage of manufacture is known as "silk in the gum" or "in the gray," and is not marketable for consumption. To make it marketable for consumption, as well as to fit it for dyeing or printing, it is necessary to remove the gum. This is accomplished by boiling the fabric in water containing olive-oil soap for a period which varies according to the weight of the goods, their quality, and the custom of the particular manufacturer.

Silk fabrics so treated lose their crude, unattractive features and are known, at least to manufacturers, converters, dyers, and printers of silk as "silks boiled off." The expressions "silks in the gum" and "silks boiled off" are not terms of common, ordinary use. As *terms* they have not found their way into the vocabulary of the mass and body of English-speaking peoples and have no popular significa-tion. Apparently they are expressions coined by English-speaking manufacturers, converters, dyers, and printers of silk to identify tex-tiles of silk at particular stages of their manufacture. By them im-porters for manufacture and conversion distinguish between the dull, stiff, hard, wiry, lusterless, unattractive silk fabric as it comes from the loom woven from the silk filaments to which the natural gum still adheres and the silk fabric similarly woven which, degummed by a process of boiling, has become bright, soft, lustrous, and flexible. True, the use of these terms is largely confined to manufacturers, converters, dyers, and printers of silk, and does not extend to import-ers of silk or wholesale dealers in silk for consumption. But as the terms *as such* have no common, ordinary, popular meaning it does seem not wholly unreasonable to assume that when Congress employed them it intended that they should have the sense and meaning which they were understood to convey to the class of silk dealers which for the purposes of its particular branch of the silk business invented them to distinguish crude silk fabrics from the more advanced prod-uct. Otherwise the terms *as terms* would be left without any mean-ing at all. "Silks boiled off" and "silks in the gum" are terms of distinction, and their use for that purpose is definite, uniform, and general with those whose business obliges them to distinguish be-tween the crude fabric and the one which has been further advanced.

Whether the fabric actually falls within the meaning of one expression or the other is a question of fact and not of mere name independent of the processes to which the silk cloth has been subjected and the results thereby accomplished.

The official samples received in evidence are not dull in color, or stiff, wiry, or hard to the touch. Quite the contrary, they are clear white, lustrous in appearance, soft and flexible to the hand, and even to the ordinary observer have the physical characteristics of silk. They have passed the stage of silks "in the gum." Indeed, the testimony both for the importers and the Government is to the effect that they are not "in the gum," and that just as they stand they are salable to the consumer, "to the department stores, and dealers in ladies' dress goods." Having ceased to be silks "in the gum," and a boiling process having removed the imperfections and blemishes caused by the gum in the crude product, it would seem certain that the goods under consideration have reached the status of "silks boiled off," especially as they have the qualities which the "boiling off" process is designed to produce.

But eliminating the meaning given to the expression "silks boiled off" by the branches of the silk trade which originated it, and considering the term standing by itself and not in apposition to that of "silks in the gum," and giving to the former the meaning contended for by the importer, namely, a silk from which *all* the gum has been removed by boiling, or such percentage of it as would render it fit for dyeing or printing, the burden was on the importers to show that the gum had not been so removed, and that showing they have failed to make out by a preponderance of evidence. Only one witness on the part of the importers, namely, William A. Arnold, testifies as to the weight lost by the samples on test. He is a practical dyer and printer and declares that he tested the samples by boiling them for about two hours in water in a 10 per cent solution of olive-oil soap. He found that Exhibit 1 before testing weighed, *without drying out,* 4.121 grams, and after boiling *and drying,* 3.795 grams, which was a loss of 0.326 gram, or 7.91 per cent. Exhibit 2 before testing weighed, *without drying out,* 19.76 grams, and after boiling *and drying,* 18.70 grams, which was a loss of 1.06 grams, or 5.36 per cent of its weight. Exhibit 3 before testing weighed, *without drying out,* 8.06 grams, and after boiling *and drying,* 7.725 grams, which was a loss of 0.335 gram, or 4.15 per cent of its weight. Exhibit 4 before testing weighed, *without drying out,* 11.05 grams, and after boiling *and drying,* 10.65 grams, which was a loss of 0.40 gram, or 3.61 per cent of its weight. In this connection it will be noted that Mr. Arnold *did not dry out the samples before testing them,* which, according to the preponderance of testimony, left from 6 to 10 per cent of moisture in the original

weights. On the part of the Government *six* witnesses made "boiling off" tests and testified as to the results obtained. Wilton G. Berry, Government chemist, made two tests, one with satisfactory and one with unsatisfactory samples. From the satisfactory samples, *dried before weighing and testing*, he secured the following results:

Exhibit 2, after boiling two hours in a 10 per cent solution of olive-oil soap, lost 1.46 per cent in weight.

Exhibit 3, after boiling two hours in a 1 per cent solution of olive-oil soap, lost 2.93 per cent.

Exhibit 3, after boiling one-half hour in a 10 per cent solution of olive-oil soap, lost 3.76 per cent in weight.

Exhibit 4, after boiling one-half hour in a 2½ per cent solution of olive-oil soap, lost 1.87 per cent in weight.

Carl Schoen, a silk manufacturer and one of the managing directors of the United States Silk Conditioning Works, a concern which makes tests of silk for the trade, testified that he weighed Exhibits 3 and 4 and found the gross weight to be 43.2 and 28.1, respectively; that after drying out both samples and reweighing them he found that official Exhibit 3 had lost 2 grams, and that official Exhibit 4 had lost 3.5 grams on account of moisture expelled; that after boiling both samples for one-half hour in water and olive-oil soap, rinsing them in clean water, boiling them again for another half hour, rinsing them again, and putting them through a wringer, he found on reweighing after drying that they had lost the following percentages of their weight: Official Exhibit 3, 1.92 per cent; official Exhibit 4, 1 per cent.

Gottlieb Epprecht, a tester of silk, testified that after drying and weighing Exhibit 9, which was a part of official Exhibit 4, it lost, on account of moisture expelled, 10 per cent in weight; that he then boiled the sample for one-half hour in soap and distilled water in the proportion of 2½ pounds of soap to 100 pounds of water, and after drying found no loss of weight. He further stated that he took raw habutai, boiled it in a 2½ per cent soap solution for half an hour, then washed it in boiling water, put it through an acid bath, wrung it out, and after drying it out until it reached a constant weight, he found that the loss was 23.03 per cent. Another piece of the same material boiled in the same solution for one and one-half hours and subsequently treated as was the first piece lost 23.53 per cent. A third piece of the same material boiled for one-half hour in a 10 per cent solution of soap as compared with the water and treated as were the other pieces lost 23.03 per cent, the same loss which was shown by using a 2½ per cent solution of soap. A fourth piece boiled for one and one-half hours in a 10 per cent solution of soap and receiving the same subsequent treatment as was given in the other tests showed a loss of 24.03 per cent

in weight. From this it would appear that whether the solution of soap be strong or weak and the boiling be for a longer or shorter period, the loss in weight, even for raw habutai, is about the same.

Arthur E. Cramer, 60 years in the business of manufacturing, printing, and dyeing silks, testified that after drying out he submitted official Exhibits 1 and 2 to a boiling test for an hour in the usual solution of soap and water; that he then passed the samples through alcohol to remove any oil that might remain in the fabric, and then through an acid to remove any alkali which might have been absorbed from the water, and after drying and reweighing he found that there was practically no loss of weight.

Albert Blum, a dyer and finisher of silks, at present connected with the United Piece Dyeing Works at Lodi, N. J., testified that under his supervision official Exhibits 1, 2, 3, and 4 were weighed *without drying*, then boiled for one-half hour in the ordinary boiling-off solution used by his concern for the degumming of silk, dried by the hot-air method, and weighed again with the following results:

|  | Before boiling off. | After boiling off. | Loss. | Per cent. |
|---|---|---|---|---|
|  | *Grams.* | *Grams.* | *Grams.* |  |
| Exhibit 1 | 1.650 | 1.605 | 0.045 | 2.73 |
| Exhibit 2 | 4.078 | 4.058 | .020 | .49 |
| Exhibit 3 | 3.434 | 3.380 | .054 | 1.57 |
| Exhibit 4 | 5.399 | 5.314 | .085 | 1.57 |

John P. Cheney, a chemist acquainted with all the processes of dyeing and printing silks and employed for 17 years by dyers and printers of silks, testified that after drying out he boiled official Exhibit 2 in water with 1½ per cent of soap as compared with the weight of water, and after drying again found that the loss of weight was 0.96 per cent. He stated that silks not dried out before testing contained from 6 to 10 per cent of moisture, in which he is confirmed by Epprecht, Schoen, and Cramer. He also declared that by repeated boilings one might get a loss each time, but that he did not believe it would be gum. He thought such additional losses would be due to action on the fiber itself, and in this he is confirmed by Huber, a Government witness, and to some extent by the importers' witness Arnold, who, in giving a reason for not boiling the samples longer than two hours, says:

You simply take away from the quality of the silk if you boil it further. I mean take away the luster—take away from the general appearance.

On this state of the evidence, even if it be accepted that more than a 5 per cent loss of weight on a boiling test indicates a silk "in the gum" rather than a silk "boiled off," as decided in H. Mendelson &

Co. v. United States (154 Fed. Rep., 33); even if it be assumed that none of the loss of weight found by Arnold was due to moisture and all of it was caused by gum removed, the importers have failed to show such a loss by a preponderance of evidence.  If we deduct at least 6 per cent on account of moisture from the original weights found by Arnold, the results which he obtained are more favorable to the Government than those ascertained by some of the Government witnesses, and the importer is left without any proof whatever that the silks on test lost 5 per cent or more in weight.   It is true that, due to the different percentages of soap used in these tests, the different periods for which the samples were boiled, and the different sizes of the samples tested, there were slight differences in the results achieved by the several Government witnesses who tested the samples.   As all the tests for the Government, except that made by the Government chemist, seem to have been made, however, for the periods adopted and with the solution customarily used by the several manufacturers and converters of silk in the usual course of business, each of those tests was entitled to fully as much credence as that made by the witness for the importers, which had nothing more to recommend it than that it was made under the conditions which obtained in his business.

Again, manufacturers, converters, dyers, and printers of silk, eight in number, testified that these silks are "boiled off," and nine in number testified that they are ready and fit for dyeing and printing.   Two witnesses for the importers, equally qualified with those of the Government, declare to the contrary, and assert that they are not boiled off and they are not fit for dyeing and printing.   Therefore, regarding the case from the point of view that the "boiling off" of silks is a process of manufacture and that the question of whether silks are boiled off or not is one purely of fact and of expert knowledge, and assuming for the moment that a silk not fit for dyeing or printing indicates a silk that has not been properly "boiled off," the weight of the evidence is against the importers, and we are obliged to sustain the finding of the board.   Whether the decision of the appeal is made to depend on the meaning to be given to the expressions "silks in the gum" and "silks boiled off," or on loss of weight shown by boiling off tests, or on expert testimony as to whether the silks have been actually boiled off and are fit for dyeing and printing, there seems to be no escape from the conclusion that the silks are boiled off and that the assessment of the collector was correct.

The decision of the Board of General Appraisers is *affirmed.*

MONTGOMERY, Presiding Judge, and HUNT and BARBER, Judges, concur.   DE VRIES, Judge, having participated in the decision of the board, did not sit.